By the Court.—
The question whether this action is maintainable by the assignee, under all the circumstances of the case, may receive some illustration by a statement of the substantial parts of the second and third resolutions in Spencer's case. By the second, it appears, that if a man covenants for himself and his assigns, yet if the thing to be done, be merely collateral to the land, and does not concern the thing demised in any sort, the assignee shall not be charged. The instances stated *324 are, where a lessee covenants for himself and his assigns, to build a house upon the land of the lessor, which is not parcel of the demise, or to pay any collateral sum of money to the lessor ; as an action would not lie in any of these cases against the assignee of the lessee, it follows for the same reason, that no action would be maintainable by the assignee of the reversion against the lessee. The reason is satisfactorily explained by the examples stated in the third resolution. The first of these is a lease of a stock of cattle or goods, with a covenant to deliver them or the value at the end off the term. This does not bind, the assignee because it is a thing merely in action in the personaly, and is destitute of the privity which subsists between the lessor and lessee of lands in respect of the reversion. The next instance is of a lease of house and lands, with a stock or cattle or sum of money rendering rent, with a covenant by the lessee, that he or his assigns shall re-deliver the money or cattle at the end of the term : Neither is the assignee bound in this case, although the rent might have been increased in respect of the money and cattle ; because, the covenant is personal and binds only the covenanter, his executors and administrators.
From the whole of this case, it may be said down as a rule without any exception, that a covenant to run with the land, and bind the assig-nee, must respect the thing granted or demised, and that the act covenanted to be done or omitted, must concern the lands or estate conveyed. But when it appears on the face of this declaration, that the defendant’s testator who sold the lot, neither had, nor pretended to have, any title to it; that on the contrary, Mary, his daughter, had the complete seisin under the deed from *325 Cranston; that the testator having conveyed no title to M’Connell, the plaintiff could consequently derive none from him, it may be asked, what is there to create any privity between these parties, either of estate or contract ? The maxim, tranfit terra, cum onere, pre-supposes a transfer of the land, and when that actually takes place, it forms the medium of a privity between the assignees. Unless, therefore, a presumption is made against the unequivocal statement in the declaration, the title of this lot never ceased to be in the daughter, from the time Cranston conveyed to her. Suppose the father and mother had entered into the covenants contained in the deed, by a separate instrument, unaccompanied with any conveyance of the land, no one could argue that an assignee might enforce in a court of law, the benefit of such a contract. Can the case, then, be materially altered, by annexing these covenants to a deed of bargain and sale, which as a conveyance under the statute of uses, transfers only what the bargainer might rightfully convey ? For the declaration shews that rightfully he could convey nothing. If one man covenants that another shall quietly enjoy or obtain a conveyance for an estate which is owned by a third, this binds the covenanter and his executors or administrators to the covenantee, but cannot extend to the assignees of the latter. Nor can I conceive that the law is different, where a man tells an estate and makes the same covenants, provided it appears upon the declaration that he had no right. Both cases are equally devoid of that privity which can alone form the basis of reciprocal remedies to the parties.
So far the cafe has been briefly considered, as influenced by the general principles laid down in *326 Spencer’s cafe. Some other authorities approach more directly to the question upon the record. The case of Webb vs. Russel, 3 Term. Rep. 393, explicitly shews, that there mult be a privity of estate between the covenanting parties; and therefore if a mortgagor and mortgagee of a term, make a lease, in which the Covenants for the rents and repairs are with the mortgagor and his assigns, the assignee of the mortgagee cannot maintain an action for the breach of the covenants, because they are collateral to his assignors interest in the land, and therefore do not run with it; The mortgagor having no more than an equitable title could transfer no privity ; but yet he himself might sue upon the covenants, as was done in this very case, 1 H. Bl. 562. In that case, the claim, though perfecty consonant with natural equity, and even so strong on the merits as to inspire the court with a wish that they might see a ground whereon to decide in the plaintiff’s favor, was nevertheless compelled to yield to the rules and policy of the law. It therefore furnishes an answer to all the arguments which might be drawn from the justice and convenience of supporting the present action ; since it is of primary importance to preserve in an uniform and steady direction, the principles of law which govern estates and contracts, that a knowledge of the consequences may assist men in regulating their transactions. And upon this occasion, it may not be improper to use the language of a diligent and learned author : “ Arguments from inconveni- " ence certainly deserve the greatest attention, “ and where the weight of other reasoning is nearly " in equipoise, ought to turn the scale. But if " the rule of law is dear and explicit, it is vain “ to insist upon inconvenience; nor can it be " true that nothing which is inconvenient is law *327 "ful, for that supposes, in those who make laws, " a perfection which the most exalted human wis“ dom is incapable of attaining, and would be " an invincible argumenl against ever changing “ the law.” Harg. Coke Litt.
The case next to be examined, is that of Noke vs. Awder, Cro. Eliz. 373, 476, which I will succinctly state. The plaintiff declared that John King let the lands to the defendants for a term of years, who granted them by indenture to one Abel, with a covenant that Abel and his assigns should peaceably enjoy, without interruption , of any person, and that Abel assigned to the plaintiff. The declaration then states, that long before John King had any thing in the lands, one Robert King was seized in fee, and died seized, whereupon the land descended to Thomas King, who entered upon the plaintiff, and ousted him. After a verdict for the plaintiff, the exception taken in arrest of judgment was, that the plaintiff not having shewn that John King had any thing when he made the lease to the defendant, and the defendant having granted to Abel by indenture, nothing passed thereby, but by estoppel; then when Abel assigned to the plaintiff, nothing passed, for a lessee by estoppel cannot assign any thing over; consequently, the plaintiff was not such an assignee as could maintain an action of covenant against the defendant, and the court were of opinion that covenant will not lie upon an assignment of an estate by estoppel.
This case may, we think, be considered as good law, because it is in exact conformity with the principles before stated, which governed the decision in Webb vs Russel, and because it is no *328 ticed by late and respectable writers. Its authority, however, has been supposed to be weakened by what sell from the court in Palmer vs Ekins, 2 Ld Ray. 1551, but a slight examination will serve to evince, that this idea is founded in mistake, and instead of being thus shaken, it is in truth confirmed and established. The case was this : The plaintiff Palmer, in an action of covenant against Elisabeth Ekins, for non-payment of rent, declared that John Palmer was seized in fee, and being so seized, by indenture demised to the defendant, a messuage for twelve years, rendering rent to the lessor and his assigns, by virtue of which, the defendant entered, and that afterwards John Palmer, by lease and release, conveyed the reversion to the plaintiff. The breach is then assigned in the non-payment of the rent: The defendant pleaded a special nil habuit in tenementis, which was overruled upon demurrer, upon the ground that it appeared upon the face of the declaration, that the lease was made to the defendant by indenture, which estopped him from such a plea; and further, that an assignee might take advantage of an estopped, because he was privy in estate.
Between the two cases there is this striking difference, which presents itself at once—that in the latter, the declaration discloses a good title in John Palmer when he leased to the defendant, and a clear reversionary interest, when he aligned to the plaintiff, who was therefore not merely a claimant by estoppel, but (if we may so express it) an assignee in pleno jure. Whereas in Noke vs Awder, the declaration shews, that when John King made the lease to the defendant he had no estate, and consequently that the defendant’s lease to Abell was only by estoppel. who could assign *329 no interest to the plaintiff. But in Palmer vs Ekins, as the plaintiff received the estate by assignment, a privity was thus created, and he might take advantage of the estoppel, which appeared upon the declaration.
It is evident then, that this case does not, either expressly or by implication, warrant the inference that an assignee by estoppel may maintain covenant: The proposition which it does warrant is essentially different, viz. that an assignee (by which is meant an assignee with an interest) may take advantage of an estoppel appearing upon the face of the declaration. From the whole of the case it may be fairly collected, that the judgment would have been rendered against the plaintiff, had it appeared upon the declaration, that he was no more than an assignee by estoppel.
It is scarcely necessary to make any remarks upon the cases cited to shew that parties or privies in estate or interest are bound by estoppel. The position is admitted, but it can only be correctly applied to those cases where the privity appears upon the face of the proceedings, certainly not to those where the want of privity is manifest. Then admitting that Montgomery’s deed (which is a deed poll) would, if nothing more appeared, upon the declaration, but that the assignment and the breach estop him from denying his title, which is nearly the cafe in 2 Ld. Ray. Yet under the circumstances which do exist in the cafe, there are two rules which must be taken into the account, one is that stranger shall neither be bound by, nor take advantage of an estoppel; the other is, that where the truth is apparent upon the same record, there the adverse party shall not be estopped to take advantage of it; for he can *330 not be estopped to alledge the truth, when it appears of record. Coke Litt. 352 b.
The remarks we have made lead us to this conclusion: That the plaintiff, placed in the best possible light, is no more than an assignee by estoppel; that there is a total absence of that privity between him and the defendant, which could alone form the chain of legal communication; that the covenants made by Montgomery were collateral to the title; and because these things distinctly appear upon the declaration, we are of opinion that the judgment should be arrested.